Katherine D. Hartman, Esquire (NJ Bar ID: 027091991)
ATTORNEYS HARTMAN, CHARTERED
68 East Main Street
Moorestown, New Jersey 08057
Ph. (856) 235-0220; Fax: (856) 273-8617
Email: kdhesq@attorneyshartman.com
Attorneys for Michele Brady
Our File No.  19-0020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE BRADY, | : |
| Plaintiff, | : |
| | : CIVIL ACTION No.: |
| vs. | : |
| LUTRONIC USA LLC, | : **COMPLAINT AND DEMAND** |
| | : **FOR TRIAL BY JURY** |
| Defendant. | : |

Plaintiff, Michele Brady, (hereinafter "Brady"), by way of her attorney, Katherine D. Hartman, Esquire, of the firm Attorneys Hartman, Chartered, complains of the defendant, Lutronic USA LLC (hereinafter "Lutronic") for violations of The New Jersey Law Against Discrimination, specifically for discriminating against Ms. Brady on the basis of her sex and failing to take prompt and remedial action after Brady complained about said discrimination says:

## JURISDICTION

1. This action is brought pursuant to diversity of jurisdiction as Brady is a resident of the State of New Jersey and the defendant, Lutronic USA LLC, is headquartered at 19 Fortune Drive, Billerica, Massachusetts 01821. The amount in controversy is in excess of $75,000.00.

## PARTIES

2. Michele Brady is and, at all times relevant hereto, was a citizen of the United States residing at 15 Hudson Street, 8C, City of Hoboken, County of Hudson, in the State of New Jersey.

3. At all times relevant hereto, defendant Lutronic is a Korean corporation with the United States headquarters located at 19 Fortune Drive, Billerica, Middlesex County, State of Massachusetts 01821.

4. At all times relevant hereto, Ms. Brady was a salesperson employed by Lutronic since July 2017 and worked from her home in the State of New Jersey.

5. At all times relevant hereto, the president of the United States operation was Jeffery Knight.

6. At all times relevant hereto, the chief operating officer for the United States operation was Lee Pannell.

7. Ms. Brady was hired due to her extensive experience in medical device sales to act as a territory manager covering all New York state including New York City; Fairfield County, Connecticut; and Hudson, Bergen and Passaic Counties in New Jersey.

## **FIRST COUNT – GENDER DISCRIMINATION/SEXUAL HARASSMENT**

8. During the course of her employ, Ms. Brady was subject to numerous instances of sexual harassment including, but not limited to:

a. In February 2018, Ms. Brady was about to close a sale for four devices to a dermatologist in Brooklyn. When Ms. Brady sought the help of Mr. Knight, who attacked her and said for the first of many times "I can get a senior guy to come in here to do this."

b. Mr. Knight told Ms. Brady that she was "not cutting the mustard," and further complained that she was being overpaid.

c. In spite of Mr. Knight's criticism and refusal to help Ms. Brady, Ms. Brady successfully sold several devices.

d. Throughout her employment Ms. Brady was very successful as a salesperson and was either the first in sales or a very close second. This is true in spite of the fact Ms. Brady did not have the assistance of a junior associate unlike numerous males in the company.

e. In spite of her consistently outstanding performance, Ms. Brady was ridiculed and attacked by both Mr. Pannell and Mr. Knight. Rather than support her, they attempted to undermine her at every opportunity. When Ms. Brady approached Mr. Pannell and Mr. Knight about attending a trade show for plastic surgeons called "Cutting Edge" which she attended in 2017 and resulted in the sale of three devices for approximately $300,000, Ms. Brady was told she needed to pay the $3,500 fee for the exhibitor booth.

f. Mr. Pannell told Ms. Brady that if she did not agree to personally pay for the exhibitor booth, it was proof that she did not like her job, did not care about her job and did not have confidence in herself.

g. At no point has any male employee in the company ever been asked to pay for an exhibitor's booth from their personal finances.

h. On another occasion at a sales meeting, Mr. Pannell created a role play for Ms. Brady where he acted "as a dick doctor." His behavior was so abusive and obnoxious that numerous other salespersons came to Ms. Brady's defense and suggested that Mr. Pannell's behavior was too much.

i. During the sales meeting, Mr. Pannell made fun of female doctors, reminding the salespersons to tell a female doctor how pretty she is when they make a sales call.

j. During the same sales meeting, Manager Brian Ludwig opined that "Persian Jews were the worst" to try to sell to. Mr. Knight followed that comment by saying that Mr. Ludwig was incorrect. Persian Jews were not the worst, female Persian Jews were the worst.

k. Mr. Knight went on to tell a story where he claimed to "see a Persian Jewish woman stick her finger up a duck's ass to see how many eggs there were before making a purchase."

l. In December of 2018, Ms. Brady sold over a million dollars in merchandize.

m. In early January, Ms. Brady attended a sales meeting in Rhode

Island. At the meeting a sales manager approached Ms. Brady and said he would like her to "suck his dick the way she was sucking on her chicken wing." The same sales manager also touched a woman's breast during that meeting. When the administrative support person complained about his conduct, she was sent back along with the other administrative attendee and the male salesperson was permitted to stay.

n. At the same sales meeting, Ms. Brady learned that a distributor who had several people working under him had fewer sales for 2018 than she had. When Mr. Knight approached this distributor and Ms. Brady, the distributor complimented Ms. Brady on her sales accomplishments. However, Mr. Knight minimized her success and, in fact, suggested that the distributor had sold more than Ms. Brady.

o. The distributor disagreed several times and Mr. Knight put his hand on the distributor's shoulder and said, "I think you must be mistaken about your numbers; I am sure you sold more."

p. Awards were presented at the meeting and one salesperson received both Rookie of the Year and Sales Representative of the Year, something which is highly unusual. Another salesperson received a Trailblazer Award in spite of the fact he had lower sales than Ms. Brady and in spite of the fact that he has several people working under him to generate leads.

9. This lack of recognition of Ms. Brady's stellar sales record is further reflected in Lutronic's decision not to publicize ranking by sales, a decision apparently

made to avoid demonstrating that Ms. Brady was consistently a top performer.

10. On January 8, 2019, Ms. Brady received a telephone call from someone claiming to be her new boss. She had not been notified that a new boss had been assigned to her.

11. One week later, on February 4, 2019, Ms. Brady received a call from Mr. Carton who told her that as of that day she no longer handled New York City as a territory and when she asked why, he responded that it was time to bring in some "senior people."

12. Ms. Brady was replaced by not one, but two men. The first is in his 20s and certainly has far less sales experience than does Ms. Brady.

13. Ms. Brady had spent more than a year developing leads in New York City and has now been reassigned to a territory which will force her to start over with a substantial anticipated reduction in income.

14. The conduct complained of by Ms. Brady would not have occurred but for the fact that she is female.

15. The conduct complained of by Ms. Brady was severe and pervasive enough to make a reasonable woman believe that the terms and conditions of her employment were altered, and that the working environment was hostile and abusive and caused her constructive discharge from employment.

16. The conduct complained of by Ms. Brady did in fact make Ms. Brady believe the terms and conditions of her employment were altered and that the working environment was hostile and abusive and did cause her constructive discharge from her

employment.

17.     The alleged actions were outrageous and beyond all bounds of human indecency justifying the imposition of punitive damages.

18.     The alleged conduct was participated in by both the president of the company and the chief operating officer and were performed with reckless indifference to Ms. Brady's protected rights.

19.     As a direct and proximate result of the defendant's actions, Ms. Brady suffered damages including but not limited to emotional distress with physical manifestations of that distress; embarrassment; humiliation; incurred medical expenses; suffered a loss of income and other benefits; suffered injury to her reputation; and other personal injuries.

20.     The defendant by their forgoing actions have created a hostile work environment and denied Ms. Brady opportunities for employment in violation of N.J.S.A. 10:5-1 et seq (LAD).

**WHEREFORE**, Ms. Brady demands judgment against the defendant, jointly, severally, and, in the alternative, for compensatory damages, including lost wages, damages for emotional distress, medical expenses, loss of reputation, personal injury, back pay, front pay, consequential damages, punitive damages, pre and post judgment interest, reasonable attorneys' fees enhanced under the LAD, and the cost of suit.

        ATTORNEYS HARTMAN, CHARTERED

        By:   /s/ *Katherine D. Hartman*
                KATHERINE D. HARTMAN

Dated:  May 14, 2019

## DEMAND FOR JURY TRIAL

Please take notice that Ms. Brady hereby demands a trial by jury as to all issues in the above matter.

        ATTORNEYS HARTMAN, CHARTERED

        By:   /s/ *Katherine D. Hartman*
                KATHERINE D. HARTMAN

Dated:  May 14, 2019

## DESIGNATION OF TRIAL COUNSEL

Katherine D. Hartman, Esquire, of Attorneys Hartman, Chartered, is hereby designated as trial counsel in the within matter.

        ATTORNEYS HARTMAN, CHARTERED

        By:   /s/ *Katherine D. Hartman*
                KATHERINE D. HARTMAN

Dated:  May 14, 2019